Exhibit A

IN THE CHANCERY COURT FOR RUTHERFORD COUNTY TENNESSEE
AT MURFREESBORO

KEVIN FISHER, et al.,
    Plaintiffs,
v.                                   Docket Number 10CV1443
RUTHERFORD COUNTY REGIONAL
PLANNING COMMISSION, et al.,
    Defendants;

And

IN RE: MURFREESBORO POST



## ORDER

This cause came on further to be heard on the 25th and 26th days of April, 2012, upon the Plaintiffs' Complaint seeking the finding by the Court that the Defendants violated the terms of the Tennessee Open Meetings Act by considering and approving a site plan for the Islamic Center of Murfreesboro at the May 24, 2010 meeting of the Rutherford County Regional Planning Commission, and upon the testimony of a number of witnesses who testified on April 25 and 26, 2012 and also at previous hearings in September, 2010 and later during 2010, and upon the arguments of Counsel, after which the Court took the matter under advisement, and after due consideration of the issues, issued a written Memorandum Opinion on May 29, 2012, finding that the meeting was in fact held in violation of the Open Meetings Act. In accordance with the applicable law, the Court found that the decisions of the Regional Planning Commission regarding the decisions regarding land at 2700 Veals Road in Rutherford County, Tennessee, and particularly as those decisions regarded the Islamic Center of Murfreesboro were in fact void, *ab initio*. Further, within that suit, the MURFREESBORO POST was allowed to intervene, that party seeking a Declaratory Judgment that the MURFREESBORO POST was in 2010 and is today a newspaper of general

circulation, but, under the laws governing Declaratory Judgments, the Court found that it is proper that no declaration be made for the reason that there is no actual controversy which will be resolved by such declaration, although the Court did note that the evidence shows that the MURFREESBORO POST is a valuable part of the local community.

IT IS THEREFORE ORDERED that the Memorandum Opinion issued by the Court on May 29, 2012 is hereby incorporated into and made a part of this Order. IT IS FURTHER ORDERED that the decision of the Rutherford County Regional Planning Commission rendered on May 24, 2010 approving a site plan for the Islamic Center of Murfreesboro at 2700 Veals Road is hereby declared to be void *ab initio*, that decision having been made at a meeting which was held in violation of the Tennessee Open Meetings Act. FURTHER, in accordance with the Open Meetings Act, the Defendants are enjoined from further violations of the Open Meetings Act and shall refrain from holding further meetings without adequate public notice to the citizens of Rutherford County with regard to further matters of significant public interest at future meetings of the Rutherford County Regional Planning Commission and particularly meetings at which decisions are made regarding the issues which have been the subject of this litigation, that being the issues surrounding the land at 2700 Veals Road, Rutherford County, Tennessee, and, under the terms of the Open Meetings Law, this Court retains continuing jurisdiction over the parties and the subject matter of this lawsuit for a period of one year, or through June 1, 2013. Specifically included under the terms of this Order is the means of notice given regarding further meetings of the Rutherford County Regional Planning Commission regarding the land at 2700 Veals Road in Rutherford County, Tennessee and further regarding the site plan for the Islamic Center of Murfreesboro. Further, IT IS ORDERED, in accordance with the Open Meetings Act that the Defendants shall report in writing

to the Court its actions regarding notice of meetings regarding the land at 2700 Veals Road, Rutherford County, Tennessee and issues regarding the Islamic Center of Murfreesboro for a period of one year and through June 1, 2013, a single collection written report being required and declared sufficient with regard to all Defendants.[1]

IT IS FURTHER ORDERED that the Court enters no Order regarding the Intervening Complaint filed by the MURFREESBORO POST and dismisses that action.

Costs will be paid by the Defendants.

Enter this the 1st day of June, 2012.

*[signature]*
Judge

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES THAT A TRUE AND ACCURATE COPY OF THE FOREGOING HAS BEEN FORWARDED ON THIS THE 1st DAY OF JUNE, 2012 TO HONORABLE JOE M. BRANDON, HONORABLE J. THOMAS SMITH, HONORABLE JAMES C. COPE, HONORABLE JOSH A. MCCREARY, AND HONORABLE DAVID B. LAROCHE, AT THEIR ADDRESSES CONTAINED WITHIN THIS FILE.

JOHN A. W. BRATCHER, CLERK AND MASTER
BY: *[signature]* Raechelle Wilson
DEPUTY CLERK AND MASTER

---

[1] The Plaintiffs propose that the Court enter an Injunction against the Court, mandatory in nature, directing the County officials and third parties to cease construction at 2700 Veals Road. The Court notes, however, that such is not now a part of this action, and, in fact should be the subject of separate matters either in the nature of a mandamus action or further injunctive relief. The Court further notes that the terms of this order do not prohibit the Defendants from again considering the issues which were the subject of the May 24, 2010 meeting, provided proper notice is given under the law.

IN THE CHANCERY COURT OF TENNESSEE
SIXTEENTH JUDICIAL DISTRICT
AT MURFREESBORO
APRIL 26, 2012

FILED
2012 MAY 29 AM 9: 23
JOHN A.W. BRATCHER
CLERK AND MASTER

KEVIN FISHER, et al. v. RUTHERFORD COUNTY REGIONAL
PLANNING COMMISSION, et al. and the MURFREESBORO POST

**Trial on the Merits**

---

**No. 10-CV-1443 - Mailed May 29, 2012**

---

Before the Court is perhaps the final segment in a cause which has in many respects gripped the citizens of this county as has no other in recent memory. So many factors in this cause have involved matters of public policy under the law. Public policy is generally not determined by local trial Courts—even Courts of Chancery. Public policy is generally determined by our Supreme Courts—state and federal—and by our state legislature and by Congress. Nonetheless, it has fallen the duty of this Court to establish—at least initially and until reviewed by superior courts—the various issues of policy which have been raised. In this final chapter in this cause, then, the Plaintiffs have questioned whether the County has violated the provisions of the Tennessee Open Meetings law at the time when the Rutherford County Regional Planning Commission approved a building permit for construction of a building which has come to be known as the Islamic Center of Murfreesboro. After consideration of the law and the evidence presented, the Court finds that the action of the county was not sufficient to provide the type of notice to citizens of the county that such matters were to be considered at the meeting of the Rutherford County Regional Planning Commission which should be expected under our law. Under the mandate of the statute, the Court then finds that the actions of that Commission regarding the Islamic Center of Murfreesboro were in fact void and of no effect. The law does not prohibit the Rutherford County Regional Planning Commission from properly providing notice of the holding of another meeting at which the issue might be again considered. As a part of this suit, we are also asked to consider whether the MURFREESBORO POST is a newspaper of general circulation in Rutherford County. The MURFREESBORO POST was joined as a party upon their own motion to intervene in the suit herein, and without objection of any other party. Nonetheless, we find that there is, in fact, no pending controversy which will be resolved by the entry of such a declaratory judgment as the MURFREESBORO POST requests, and having so found, we respectfully decline to determine the issue as to whether today, the MURFREESBORO POST is a newspaper of general circulation in Rutherford County. Costs are assessed to the Defendant, Rutherford County.

**Action of the Rutherford County Regional Planning Commission is declared to be void. Issue of Declaratory Judgment as to the MURFREESBORO POST is declined. Costs are assessed to Defendant Rutherford County.**

ROBERT E. CORLEW C., delivered the opinion of the Court.

Joe Mason Brandon, Jr. Attorney at Law, 119 North. Maple Street, Murfreesboro, Tennessee 37130, and J. Thomas Smith, Attorney at Law, 2020 Fieldstone Parkway, Suite 900-264, Franklin, Tennessee 37069-4337, for the Plaintiffs, Kevin Fisher, et al.

James C. Cope and Josh A. McCreary, Attorneys at Law, 16 Public Square North, Murfreesboro, Tennessee 37130, for the Defendants, Rutherford County Regional Planning Commission, et al.

David B. LaRoche, Attorney at Law, 320 East Main Street, Suite 204, Murfreesboro, Tennessee 37130, for the intervening party, the MURFREESBORO POST.

## MEMORANDUM OPINION

Before the Court is suit in which the Plaintiffs assert that the Defendants violated the Tennessee Open Meetings law when the Defendant Rutherford County Regional Planning Commission by conducting a meeting and enacting a measure which provided for the construction of a building which has come to be known as the Islamic Center of Murfreesboro. The primary issue was whether proper notice was given to the citizens of the county of the conduct of the meeting. The Intervening Party also sought declaratory judgment regarding circulation of its paper.

Permission for construction of the Islamic Center of Murfreesboro was sought upon a tract of land outside the City of Murfreesboro, at or near the intersection of Bradyville Pike and Veals Road. The evidence showed that the construction was proposed in the 37128 zip code.

The evidence showed that the meeting of the Rutherford County Regional Planning Commission was held on May 24, 2010. The proof demonstrates that the County provided notice by providing an agenda for the meeting at the office of the Planning Commission at some point shortly before the meeting, and that the county provided notice by advertising in the legal section of the MURFREESBORO POST, a paper which is published in Murfreesboro. Much of the evidence surrounded the effectiveness of the publication in this paper and the extent to which publication in the MURFREESBORO POST satisfies the legal requirements for publication of notice.

The evidence showed that the advertisement in the Murfreesboro Post was in relatively small type near the bottom of a page which contained a number of advertisements and legal notices, most of which were provided by the City of Murfreesboro. The evidence showed that the MURFREESBORO POST had virtually no paid circulation at the time of the advertisement, but that some 13,000 newspapers are placed in the driveways within the city limits of Murfreesboro, without cost to the residents who live in homes served by the driveways. Further, some 8,000 newspapers were placed

2

in racks at some 300 locations within the cities of Murfreesboro, Smyrna, Lavergne, and Eagleville, and the unincorporated areas of the county. The proof showed that no papers were placed in driveways in any area other than portions of the incorporated city of Murfreesboro, and no papers were delivered to the area of the county where the proposed structure was located. The proof showed that only some 196 papers were placed in racks in unincorporated areas of the county, despite the fact that approximately one-third of the county's citizens live in such areas. Although there was testimony that the MURFREESBORO POST had circulated in all zip codes of the county at the time, evidence of a certified analysis of the circulation of the paper failed to demonstrate that there was any circulation in the 37149 zip code which is the Readyville Community or the 37118 zip code which is the Milton Community, both of which exist in Rutherford County. Further there was no evidence that the paper circulated in the Fosterville, which post office existed at the time, nor in the Nolensville zip code or the Mount Juliet zip code, a part of which routes are in Rutherford County. The proof did show that some papers were distributed in the 37128 zip code where the development was requested. Both the Defendants and the Intervening party suggest to us that the circulation of the POST, which then published only on Sundays, was, at the time, larger than the circulation of the DAILY NEWS JOURNAL, a subscription newspaper which also circulated in Rutherford County at the time. The NEWS JOURNAL was not at issue however, and there was no proof as to the manner of circulation of that paper, other than the fact that it was circulated to those who paid to receive it and the POST was placed in driveways within the city of Murfreesboro and otherwise placed on racks to be picked up by anyone who wished to have one or more copies.

The evidence shows that the county operates a cable television station, but there was no showing that there was any publication of notice on this cable television station. The county also operates a website on the internet. Although the evidence showed that the Defendants purported to advertise its public meetings on the internet, the evidence showed that through an oversight, there was no advertisement of this meeting on the internet.[1] Further, the proof showed that generally the county posted agendas for meetings on the website, but no agenda was published for this meeting until after the meeting occurred.[2]

The Plaintiffs argue persuasively that the issue before us was in fact a matter of great public importance and a matter of tremendous public interest. We noted in prior decisions in this cause that no Court decisions in the history of this county have attracted the volume of public attention which this litigation has drawn. The Plaintiffs further argue that the efforts of the county to provide notice to the citizens was inadequate.

---

[1] Evidence was presented by the Plaintiffs that even on May 27, 2010, three days after the meeting at issue was conducted, the county website still had not been updated to show that there was a meeting on May 24. In fact, the Plaintiffs further assert that the only meeting listed on the website was a May 10 meeting, which the Plaintiffs argue would cause one knowledgeable about regularly scheduled meetings to believe that the May 24 meeting must have been cancelled.

[2] The Plaintiffs presented evidence that the agenda for the May 24 meeting was not posted on the internet until more than a week after the meeting had occurred.

3

The Plaintiffs presented the testimony of a number of county officials, including the county commissioner who is elected to represent the district in which the building is being constructed, had no knowledge that the matter was being considered. Evidence was presented that only nine county commissioners received the MURFREESBORO POST on a regular basis. Of these nine, eight who lived in the City of Murfreesboro, had the paper delivered to their homes and one routinely picked up the paper from a free distribution rack. Evidence was further presented that few opportunities existed for those who lived near the proposed site to receive a copy of the MURFREESBORO POST because there was no home delivery in the area, and the nearest free distribution rack was some three miles away.[3] The MURFREESBORO POST also had a website at the time at issue. In fact, there was some proof that at one time the MURFREESBORO POST concentrated significantly upon publications on the internet. Nonetheless, the Plaintiffs presented proof that only some thirty-five persons could have viewed the internet section which contained the copy of the notice for the meeting at issue within the thirty days preceding the meeting.

Ironically, the law in Tennessee provides relatively few guidelines to be used in the determination as to whether the advertisement for a public meeting is adequate. The Tennessee Open Meetings Act provides in part, that before a meeting the government should "give adequate public notice of such meeting."[4] Another statute, TENNESSEE CODE ANNOTATED §13-7-105, provides a requirement for publication in a newspaper of general circulation in the county when a public hearing is scheduled, but as stated above, the County Zoning Resolution does not provide for a public hearing in this matter. All parties agree that case law is controlling here. All parties cite to a 1974 decision of our State Supreme Court which states that whether notice of a public meeting is adequate must be decided under the "totality of the circumstances" involved in the issue.[5]

Given the significance of the matters decided and the overall general interest of the community as a whole, as well as the overwhelming proof that even interested public officials did not know of the issue, we cannot find that the public notice to the community was adequate when we consider the opportunities which the county had to notify the citizens. Just as the law has,

---

[3] Although the proof showed that at the time in question, there was a free distribution rack in a shopping area where a "Publix" store was located, that rack was later removed, apparently because few persons chose to pick up a copy of the paper from this distribution site.

[4] TENNESSEE CODE ANNOTATED §8-44-103(a).

[5] *Memphis Publishing Co v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn. 1974). The Plaintiffs and Defendants, in their briefs, discuss at length a small number of other cases which we do not take the time to further analyze here, though we have considered the holdings to the extent the cases are applicable. We recognize, as the parties have ably addressed, no case is precisely on point with the case at bar, though all offer varying degrees of assistance to us in interpreting the law as it applies to the issues in this suit. Some of the cases include: *Lewis v. Cleveland Municipal Airport Authority*, 289 S.W.3d 808 (Tenn. Ct. App. 2008) *perm. app. denied* (2009); *Souder v. Health Partners, Inc.*, 997 S.W.2d 140 (Tenn. Ct. App. 1998) *pub. purs. R. 11*; *Whittemore v. Brentwood Planning Commission*, 835 S.W.2d 11 (Tenn. Ct. App. 1992) *perm. app. denied*; *Neese v. Paris Special School District*, 813 S.W.2d 432 (Tenn. Ct. App. 1990) *perm. app. denied*; *Englewood Citizens for Alternate B v. The Town of Englewood*, [unpublished] 03A01-9803-CH-0098, 1999 WL 419710 (Tenn. Ct. App. June 24, 1999) *no perm. app. filed*.

historically, shaped public thinking and public policy, the general political climate has historically shaped the law. We live today in a world which, though far less personal than in past years, is nonetheless much more information oriented. Modern means of providing information continue to increase so that the opportunity to inform citizens and taxpayers at relatively limited cost may be realized as was not possible a few decades previously. The phrase "transparency" as it refers to the openness of government has virtually become a "buzzword" as citizens who previously had little means of learning of the workings of their governments now seek to be informed as to operations of their governments as never before. Openness of government has become recognized in fashions never before contemplated. Records and documents which before would never have been seen by anyone other than authorized governmental officials now are accessible to the public at large through the various open records acts. We find that certainly in the current political climate, the laws regarding notice of open public meetings must be construed in a manner which will provide substantial notice to citizens of the workings of their government. Such is also true, then, whether the public meetings are those which are called or special meetings as well as those which are regularly scheduled meetings, particularly when significant business is discussed at an otherwise routine public meeting.

   Certainly a distinction may be drawn between notice of the occurrence of the meeting and notice of the matters to be considered at the meeting. We also recognize that the statutes appear to address the holding of the meeting while the case law addresses the further circumstances surrounding the meeting. At a time when the interest of the public generally in the operation of the government is great, and at a time when "transparency" has virtually become a buzz word, we find that the county had the obligation under the totality of the circumstances to provide better notice of the occurrence of the meeting and the fact that this matter was to have been considered. Perhaps the greatest degree of deception, though perhaps unintentional, occurs when a significant issue is discussed at a meeting where business is generally routine. Without publication of the issues of business to be discussed at an otherwise routine meeting, citizens may be lulled into the mind set that only routine matters will be raised at a meeting, when suddenly a matter which is to them of earthshaking importance suddenly comes forth.

   In addition to publication of the small legal advertisement in the MURFREESBORO POST, at some relatively small cost, the county had available the opportunity to advertise in other print media as well. Perhaps greater publicity would have been gained by providing to such media the information regarding the particularly agenda item at issue here. Given the amount of publicity which the issue has generated after the meeting, certainly such media would have provided news articles without cost before the meetings. Additionally, the county had available, apparently at little cost other than staff time, the opportunity to post substantial information on the county's own website, which of course circulates worldwide. Further, the county had the opportunity to provide notice on its cable television station again in virtually unlimited content, although, again the television station may suffer from some of the same frailties of circulation because the cable television system may not be generally available throughout the county. Whether local commercial and public radio stations might have provided notice on their airwaves was not presented in evidence, but given the attention this matter has achieved subsequently, such appears to have been

a possibility. Advertisement within the MURFREESBORO POST or the DAILY NEWS JOURNAL, which the Plaintiffs suggest has wider general circulation and contains more hard news as contrasted with features, or even the READER, which the proof shows contains more advertisements and features certainly involves the issue of cost. Advertisement in any medium can be expensive. Certainly, the county has a duty not only to notice citizens of its meetings but also to be a good steward of the taxpayers' money. While there was not a substantial amount of evidence concerning the cost of the various publications, or whether publication of the agenda would be cost-prohibitive. Nonetheless, the Court is compelled to find that a small routine advertisement in the legal section, surrounded by advertisements published by the city of Murfreesboro, near the beginning of the month simply stating meeting scheduled for the month, but schedules subject to change, is not sufficient, given the other proof surrounding the availability of that publication at the time to the citizens of the county generally. This is further true when other means of notice were also available, but were not appropriately utilized.

The issue then with which we deal is what notice was legally required. Again we note that the statutory law and the case law doe not expressly state what notice is legally necessary. We find this to be true because the notice which is proper in each case is dependent upon the totality of circumstances. Where only routine matters are discussed at a regularly scheduled meeting, comparative little notice may be necessary. By contrast, when a major issue of importance to all citizens is being discussed at a specially called meeting, the greatest notice available may be required. Here, we note that the meeting at issue was a regularly scheduled meeting, but a meeting where an issue of major importance to citizens was being discussed. Thus, some reasonable means of notice, not only of the meeting, but also of the particular issue before the body, was reasonably required.

We do not attribute any sinister motives to the county, though we note the undercurrent of the arguments presented by the Plaintiffs. We simply find that the county failed to publish the meeting on its website through oversight. Lack of proper use of the television channel may have been again simply because of lack of initiative. Publication in the manner in which the notice was provided in the MURFREESBORO POST apparently was done simply because this was the way business was generally accomplished. Nonetheless, we do not find that the notice given was that which the law contemplates given the magnitude of the matters.

We are also asked to determine whether the MURFREESBORO POST was a newspaper of general circulation in May of 2010 and further whether the MURFREESBORO POST is a newspaper of general circulation today. This issue surrounds what is generally called a declaratory judgment. Perhaps somewhat surprisingly, the law surrounding declaratory judgments is relatively new. One of the first major cases surrounding this issue was *Nashville, Chattanooga, & St. Louis Railway v. Wallace*,[6] decided by our United States Supreme Court. Trial Courts are continually admonished to determine declaratory judgments only with the greatest of caution, and only where a true

---

[6] 288 U.S. 249 (1933).

6

"controversy" is presented for decision.[7] The general rule is that a Court should decline the opportunity to render a declaratory judgment when such judgment would not terminate a controversy or uncertainty giving rise to a proceeding. Here, as stated above, the law did not require publication of the meeting at issue in a newspaper of general circulation. While the issue may be one of interest, it is not an issue in controversy and thus is not proper for our determination.[8] We certainly recognize that the evidence does show that the MURFREESBORO POST has changed during the short years of its existence. It initially had publication of more than twice the current circulation. At one point it relied more heavily on internet publication than written publication. Traditionally, it was a weekly newspaper. Now it is published twice each week. The evidence shows that there continues to be more effort placed on "hard news" rather than features, of "fluff" as the Plaintiffs called such information. Nonetheless, features continue to be a part of the paper. Though the paid circulation of the paper continues to be negligible, the evidence shows that it has a larger Sunday circulation than any other print media in the county. The extent to which the paper is read by those who reside in the rural areas of the county may still be subject to further discussion in the appropriate forum. We do note that the MURFREESBORO POST continues to provide a positive presence the local community, just as we would suggest the other media discussed within this proceeding without being named formal parties do also, including the DAILY NEWS JOURNAL and the "READER."

## CONCLUSION

Thus, we today determine that there was insufficient notice for the public meeting held on May 24, 2010 and under the terms of the law, then, the decisions reached at that meeting are void *ab initio*. This decision does not preclude the County and the various county entities from again considering the same issues at a subsequent hearing when proper notice is given.

Previously this Court rendered a decision in which we recognized that the issue regarding the construction of the structure at issue involved the question of land use. Rutherford County operates

---

[7]Later, in 1952, the United States Supreme Court heard another case in which a declaratory judgment was sought by a public carrier within the state of Utah. The Court was asked to determine whether carriage of goods was interstate commerce. To which the Supreme Court suggested, "One naturally asks, "So what?" *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 244 (1952). The Court declined to grant a declaratory judgment because the "case does not request an adjudication that [the state] has a right to do, or to have, anything in particular." *Id.*

[8]We note of course the proof regarding the Opinions of the Attorney General. As all counsel are certainly aware, no Court is bound by the opinion of the Attorney General. Though the Attorney General and his fine staff may be most learned, the opinion of the Attorney General is of no more value than the opinion of another attorney. Generally, the Attorney General is asked to offer his opinion regarding questions of law and not factual issues, surrounding a business. The Attorney General probably did very well to cease the practice of opining whether a paper was one of general circulation. So many changing facts are involved in such a determination. The Intervening Party here asks us to engage in the same type of determination which the Attorney General found was not proper for his consideration. While we acknowledge that Courts often must determine matters which would never be proper for the opinion of the Attorney General, and while we further acknowledge that there may perhaps in the future be a fact situation which may demand the decision of the Court as to whether this or another paper is a newspaper of general circulation, the facts before us here do not demand that decision now.

7

under a set of land use laws which is somewhat unusual, and which this and other Courts have suggested in varying fashions, are in dire need of revision. Until those laws are modified, however, the duty of the county is to apply those laws without discrimination. The county land use provisions provide that when one seeks permission to construct a structure to be used as a religious meeting place, no public hearing is required. We do not intend through our ruling here to suggest that there is, under the zoning resolution, any entitlement of the public to a public hearing. Thus, as the Defendants suggest, the citizens do not have the right to be heard at the public meeting. Nonetheless, as the Plaintiffs suggest, the citizens do have the right to notice of the hearing, and the right to be present in an orderly manner at the public meeting. As to the issue of construction of a religious meeting place, although the Planning Commission certainly may deny such permission, the opportunities to deny such permission are limited, and any action by the government must be taken in a non-discriminatory manner, and denial of permission must be made for non-discriminatory reasons. Under the First Amendment to our Federal Constitution, freedom of religion is to be safeguarded. The federal courts have previously determined that the type of meeting place which was proposed is in fact a religious meeting place and that the practice of Islam is in fact a religion subject to the protections of our federal Constitution. We acknowledge that the county must comply with the Federal Religious Land Use and Institutionalized Persons Act (RLUIPA), the Federal Religious Freedom Restoration Act (FRFRA), and the Tennessee Religious Freedom Restoration Act (TNRFRA). While the decision regarding the use of the land in question is within the purview of the county legislative bodies, those decisions must be made in a nondiscriminatory manner under the federal law. Nonetheless, the decisions regarding land use must be made by the county legislative bodies, and the duty of the Court is not to usurp the duties of the legislative bodies. Our review of those decisions is limited in scope.

We further decline to grant Declaratory Judgment regarding the MURFREESBORO POST.

We will allow counsel for the Plaintiffs to prepare the Order. This Memorandum Opinion will become a part of the file in this cause. Costs regarding this issue will be taxed against the Defendants.

ROBERT E. CORLEW, CHANCELLOR